## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES RAY MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | CV 07-347-WKW |
| SOUTHERN NUCLEAR | ) | |
| OPERATING COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND DEFENSES OF DEFENDANT SOUTHERN NUCLEAR OPERARTING COMPANY, INC. TO PLAINTIFF'S COMPLAINT

Defendant Southern Nuclear Operating Company, Inc. ("Southern Nuclear")

files the following answer and affirmative defenses to Plaintiff's complaint.

### INTRODUCTION

To paragraph 1:    No response is required from Southern Nuclear.

### JURISDICTION

To paragraph 2:    Admitted.

To paragraph 3:    Southern Nuclear admits that Mr. Morris formerly was

employed at the Joseph M. Farley Nuclear Plant in Houston County, Alabama,

admits that this Court properly has venue, but denies the remaining allegations of

this paragraph of the complaint.

## PARTIES

To paragraph 4:   Southern Nuclear admits that it previously employed Mr. Morris, but lacks knowledge or information sufficient to form a belief about the remaining allegations of this paragraph of the complaint and, therefore, denies such allegations.

To paragraph 5:   Southern Nuclear admits that it is a Delaware corporation, admits that it does business in Houston County, Alabama, admits that it employs more than fifteen people, and admits that it is subject to the Americans with Disabilities Act ("ADA").

## STATEMENT OF FACTS

To paragraph 6:   Southern Nuclear admits that effective November 13, 1990, Mr. Morris was employed as an engineer at the Joseph M. Farley Nuclear Plant, and admits that at the time of his termination on April 7, 2006, Mr. Morris was a senior engineer.

To paragraph 7:   Southern Nuclear admits that Mr. Morris took FMLA-approved leave from April 29, 2005 through May 18, 2005 for medical treatment for coronary artery disease ("CAD"), and admits that Mr. Morris returned to work on May 19, 2005, with no restrictions to his duties as senior engineer. Southern Nuclear also admits that Mr. Morris took FMLA-approved leave from June 1, 2005 through June 15, 2005 for medical treatment for CAD, and admits that Mr. Morris

returned to work on June 16, 2005, with no restrictions to his duties as senior engineer. Southern Nuclear further admits that Mr. Morris took FMLA-approved leave from December 12, 2005 through December 16, 2005 for medical treatment for hypertension, and admits that Mr. Morris returned to work on Monday, December 19, 2005, with no restrictions to his duties as senior engineer. Southern Nuclear lacks knowledge or information sufficient to form a belief about the remaining allegations of this paragraph of the complaint and, therefore, denies such allegations.

To paragraph 8:    Southern Nuclear denies that at all times relevant to the complaint Mr. Morris remained fit for duty and able to perform the essential functions of his job under Nuclear Regulatory Commission ("NRC") Fitness for Duty ("FFD") regulations, 10 C.F.R. Part 26, because he refused to agree to the conditions of and to sign a medical compliance contract as a condition of his fitness for duty, rendering him ineligible for the requisite security clearance for unescorted access to protected areas of Joseph M. Farley Nuclear Plant, an NRC requirement and an essential function of his job. Southern Nuclear admits that Mr. Morris worked without any restrictions to his job duties during January 2006, admits that it received reports that Mr. Morris failed to attend meetings during a work-related steam generator conference in Phoenix, Arizona during January 9 – 13, 2006, and admits that it received reports that Mr. Morris had been observed

3

drinking heavily by other attendees of the conference. Southern Nuclear denies all allegations of this paragraph of the complaint inconsistent with the foregoing.

To paragraph 9:    Denied as stated.    Southern Nuclear admits that on February 8, 2006, following an investigation initiated after receiving reports that Mr. Morris failed to attend meetings and that he drank heavily at a work-related steam generator conference in Phoenix, Arizona on January 9 - 13, 2006, Southern Nuclear questioned Mr. Morris's reliability and trustworthiness and therefore his fitness for duty under NRC FFD regulations, and admits that it required Mr. Morris to undergo a mandatory fitness for duty evaluation as a condition of continued employment.    Southern Nuclear further admits that as a part of this mandatory fitness for duty evaluation, Mr. Morris was evaluated by Dr. Meghani, a psychiatrist, on February 14, 2006, but denies that Mr. Morris was fit for duty under NRC Regulations following the evaluation by Dr. Meghani.    Southern Nuclear denies all allegations of this paragraph of the complaint inconsistent with the foregoing.

To paragraph 10:    Denied as stated. Southern Nuclear admits that as a part of the mandatory fitness for duty evaluation, Mr. Morris was evaluated by Dr. McKeown, a psychologist, on February 22, 2006, but Southern Nuclear denies that Mr. Morris was fit for duty under NRC Regulations following the evaluation by

Dr. McKeown. Southern Nuclear denies all allegations of this paragraph of the compliant inconsistent with the foregoing.

To paragraph 11: Denied as stated. Southern Nuclear admits that as part of the mandatory fitness for duty evaluation and as a condition of continued employment, Mr. Morris was required to undergo intensive outpatient treatment for alcohol abuse and additional evaluation and treatment for depression before he could be certified as fit for duty and released to return to work under NRC Regulations. Southern Nuclear further admits that following the conclusion of the intensive outpatient treatment for alcohol abuse and the evaluation and treatment for depression, Southern Nuclear required Mr. Morris to agree to the conditions of and to sign a medical compliance contract as a condition of his fitness for duty and continued employment, admits that Mr. Morris refused to agree to the conditions of and to sign the medical compliance contract, and admits that it terminated Mr. Morris's employment because he refused to agree to the conditions of and to sign the medical compliance contract as required for his fitness for duty. Southern Nuclear denies all allegations of this paragraph of the complaint inconsistent with the foregoing.

To paragraph 12: Southern Nuclear denies that its requirement that Mr. Morris agree to the conditions of and sign a medical compliance contract before allowing him to return to work was "without appropriate justification." Southern

Nuclear admits that following the conclusion of the intensive outpatient treatment for alcohol abuse and the evaluation and treatment for depression, Southern Nuclear required that Mr. Morris agree to the conditions of and sign a medical compliance contract as a condition of his fitness for duty and continued employment, admits that Mr. Morris refused to agree to the conditions of and to sign the medical compliance contract, and admits that it terminated Mr. Morris's employment because he refused to agree to the conditions of and to sign the medical compliance contract as required for his fitness for duty. Southern Nuclear denies all allegations of this paragraph of the complaint inconsistent with the foregoing.

To paragraph 13: Southern Nuclear denies that any of its conduct constituted an "unlawful intrusion into his private affairs" or that Plaintiff engaged in protected "opposition." Southern Nuclear admits that Mr. Morris met with Southern Nuclear's Medical Review Officer, Dr. Mazyck, to discuss the medical compliance contract, admits that Mr. Morris refused to agree to the conditions of and to sign the medical compliance contract as required by Southern Nuclear, but instead marked through all the conditions of the medical compliance contract. Southern Nuclear further admits that Dr. Mazyck signed the document to memorialize the meeting with Mr. Morris, but denies that either Dr. Mazyck or

Southern Nuclear agreed to accept the medical compliance contract from Mr. Morris unless he agreed to abide by all the conditions included therein.

To paragraph 14:   Denied as stated.   Southern Nuclear denies any and all allegations of "unlawful conduct" and denies that Plaintiff engaged in protected "opposition."   Southern Nuclear admits that following the conclusion of the intensive outpatient treatment for alcohol abuse and the evaluation and treatment for depression, Southern Nuclear required Mr. Morris to agree to the conditions of and sign a medical compliance contract as a condition of his fitness for duty and continued employment, admits that Mr. Morris refused to agree to the conditions of and to sign the medical compliance contract as required for his fitness for duty, and admits that it terminated Mr. Morris's employment because he refused to agree to the conditions of and to sign the medical compliance contract.   Southern Nuclear denies all allegations of this paragraph inconsistent with the foregoing.

To paragraph 15:   Southern Nuclear denies that the medical compliance contract was "unlawful," but admits that it terminated Mr. Morris's employment on April 7, 2006, because he refused to agree to the conditions of and to sign the medical compliance contract as required for his fitness for duty.

To paragraph 16:   Admitted.

To paragraph 17:   Denied.

## COUNT I
## ADA MEDICAL INQUIRY VIOLATIONS

To paragraph 18:   Southern Nuclear realleges and adopts its responses to paragraphs 1-17 of the Complaint as if fully set forth herein.

To paragraph 19:   Denied.

To paragraph 20:   Denied.

To paragraph 21:   Denied.

To paragraph 22:   Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief.

To paragraph 23:   Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief.

## COUNT II
## RETALIATION UNDER ADA

To paragraph 24:   Southern Nuclear realleges and adopts its responses to paragraphs 1-23 of the Complaint as if fully set forth herein.

To paragraph 25:   Denied.

To paragraph 26:   Denied.

To paragraph 27:   Denied.

To paragraph 28:   Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief.

To paragraph 29:   Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (TORT OF OUTRAGE)

To paragraph 30:   Southern Nuclear realleges and adopts its responses to 1-29 of the Complaint as if fully set forth herein.

To paragraph 31:   Denied.

To paragraph 32:   Denied.

To paragraph 33:   Denied.

Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief requested in the paragraph beginning with "WHEREFORE."

## COUNT IV
## INVASION OF PRIVACY AGAINST ALL DEFENDANTS (WRONGFUL INTRUSION)

To paragraph 34:   Southern Nuclear realleges and adopts its responses to paragraphs 1-33 of the Complaint as if fully set forth herein.

To paragraph 35:   Denied.

To paragraph 36:   Denied.

To paragraph 37:   Denied.

Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief requested in the paragraph beginning with "WHEREFORE."

## EQUITABLE PRAYER FOR RELIEF

Southern Nuclear denies that Mr. Morris is entitled to any of the requested relief.

Southern Nuclear denies each and every allegation of the complaint not expressly admitted herein.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's complaint and each count thereof fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The nature and scope of the Plaintiff's complaint exceeds the scope of the charge filed with the EEOC.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations and/or the doctrine of estoppel, laches or unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiff's claims for relief are barred by failure to mitigate damages, if any.

## FIFTH AFFIRMATIVE DEFENSE

Southern Nuclear at all times acted in good faith and without discriminatory intent.

## SIXTH AFFIRMATIVE DEFENSE

In the alternative, Southern Nuclear did not willfully violate any of the statutes or laws referenced in the complaint.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not a qualified individual with a disability protected by the ADA.

## EIGHTH AFFIRMATIVE DEFENSE

Southern Nuclear denies that Plaintiff has been discriminated or retaliated against based upon disability, perceived disability, record of disability, or on the basis of any other protected status.

## NINTH AFFIRMATIVE DEFENSE

In dealing with Plaintiff, Southern Nuclear acted based on reasonable factors other than disability or protected activity.

## TENTH AFFIRMATIVE DEFENSE

Southern Nuclear denies that it committed a "medical inquiry violation."

## ELEVENTH AFFIRMATIVE DEFENSE

Southern Nuclear's actions were required in order to comply with the stringent requirements of the NRC to ensure that its employees are fit for duty, to ensure the reliability and trustworthiness of persons granted authorization for unescorted access, and to ensure the well-being and safety of the general public.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff failed to meet the NRC Fitness for Duty requirements and thus could not be granted unescorted access, an essential function of his job, in light of his refusal to agree to the conditions of and to sign a medical compliance contract as required for his fitness for duty.

## THIRTEENTH AFFIRMATIVE DEFENSE

All of the decisions and/or actions challenged as discriminatory and or retaliatory in the complaint were undertaken for legitimate, nondiscriminatory, non-retaliatory, non-pretextual reasons.

## FOURTEENTH AFFIRMATIVE DEFENSE

In the alternative, some or all of the decisions and/or actions challenged as discriminatory or retaliatory in the complaint would have been undertaken even had the Plaintiff not had the protected status alleged.

## FIFTEENTH AFFIRMATIVE DEFENSE

Southern Nuclear's decision to terminate Plaintiff's employment was job-related and consistent with business necessity.

## SIXTEENTH AFFIRMATIVE DEFENSE

Southern Nuclear exercised reasonable care to prevent and correct promptly any discriminatory or retaliatory behavior in the workplace. Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by Southern Nuclear or to avoid harm otherwise.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Southern Nuclear pleads that it did not invade Plaintiff's privacy, physical seclusion or solitude. Alternatively, Southern Nuclear pleads that Plaintiff had no reasonable expectation of privacy, seclusion, or solitude.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Southern Nuclear pleads that it did not invade Plaintiff's private activities in such a manner as to cause outrage. Alternatively, Southern Nuclear pleads that any such invasion would not offend a person of ordinary sensibilities.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages violates the United States and Alabama constitutional protections from, including with limitation, excessive fines, cruel and unusual punishment, denial of due process, and denial of equal protection of the law.

## TWENTIETH AFFIRMATIVE DEFENSE

Southern Nuclear cannot be held liable for any punitive damages because any wrongful conduct was contrary to Southern Nuclear good faith efforts to comply with the law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Southern Nuclear cannot be held liable for punitive damages because the employee or employees who committed the alleged discriminatory behavior were

not employed in a managerial capacity such that their actions may be imputed to Southern Nuclear.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for punitive damages are barred further because the acts, if any, and omissions, if any, of Southern Nuclear, which is specifically denied, fail to rise to the level required to sustain a reward of punitive damages; were trivial and isolated; were not motivated by evil intent or discrimination; do not evidence a malicious, oppressive, or fraudulent intent to deny Plaintiff his protected rights or to harass or to otherwise discriminate against Plaintiff; and are not so wanton or willful as to support an award of punitive damages.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Southern Nuclear did not engage in conduct sufficient to justify an award of punitive damages, as specified in Ala. Code § 6-11-20 (1975). In the alternative, any award of punitive damages may not exceed the limitations imposed by Ala. Code § 6-11-21 (1975).

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for compensatory and punitive damages are capped pursuant to 42 U.S.C. § 1981a.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Southern Nuclear reserves the right to amend its answer to assert additional affirmative defenses.

s/Leigh Anne Hodge
Leigh Anne Hodge
Attorney for Defendant, Southern Nuclear
Operating Company
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5698
E-mail: lhodge@balch.com


Brent Cobb
Attorney for Defendant, Southern Nuclear
Operating Company
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5892
E-mail: bcobb@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system and service will be perfected upon the following

this the 21st day of May, 2007:

Elizabeth B. Glasgow
Farmer, Price, Hornsby & Weatherford, LLP
100 Adris Place
Dothan, AL 36303

Respectfully submitted,


s/Leigh Anne Hodge
Leigh Anne Hodge
Attorney for Defendant, Southern Nuclear
Operating Company
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5698
E-mail: lhodge@balch.com

Brent Cobb
Attorney for Defendant, Southern Nuclear
Operating Company
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5892
E-mail: bcobb@balch.com